[Cite as *Morgan Woods Homeowners' Assn. v. Wills*, 2014-Ohio-1578.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MORGAN WOODS HOMEOWNERS' ASSOCIATION | : | JUDGES: |
| | : | |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13-CA-62 |
| | : | |
| DAVID B. WILLS, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Licking County Court of
Common Pleas, Case No. 07CV01043

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     April 10, 2014

APPEARANCES:

For Plaintiff-Appellee:

W. PRENTICE SNOW
MORROW & ERHARD CO., L.P.A.
10 West Locust St.
P.O. Box 487
Newark, OH 43058-0487

For Defendants-Appellants:

JAMES R. COOPER
MORROW, GORDON & BYRD, LTD.
33 W. Main St.
P.O. Box 4190
Newark, OH 43058-4190

*Delaney, J.*

{¶1} Defendants-Appellants David B. and Sharon J. Wills appeal the June 17, 2013 judgment entry of the Licking County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Defendants-Appellants David B. and Sharon J. Wills purchased property located at 896 Howell Drive, Newark, Licking County, Ohio, in June 2004. The property is located in Morgan Woods, a platted subdivision, which is subject to certain covenants, easements and restrictions of record filed with the Licking County Recorder's Office on September 20, 2000. ("Morgan Woods Restrictions").

{¶3} Article IV of the Morgan Woods Restrictions establishes an Architectural Control Committee ("ACC"). The Morgan Woods Restrictions, as set forth in subsection 1(b) require the ACC to "establish, maintain, and preserve design standards" for all improvements in the Morgan Woods subdivision. Subsection 1(c) further provides that the ACC "shall, from time to time, establish architectural, building, and environmental standards for all improvements in Morgan Woods." Subsection 1(d) states that the decisions of the ACC regarding conformity to the design standards and restrictions contained in the Covenants "shall be conclusive and binding on all parties." No procedural requirements as to the adoption of design standards are contained in the Covenants.

{¶4} Section 2(a) of Article IV of the Covenants provides that no improvements visible from the exterior shall be made without the express written consent of the ACC.

{¶5} Section 2(b) of Article IV states, in pertinent part, as follows:

Approval shall be based, among other things, upon conformity and harmony of the proposed plans with the Design Standards, the restrictions contained herein, and other structures in Morgan Woods; the effect of erection and use of improvements on neighboring property; and conformity of the plans and specifications to the purpose and intent of the provisions hereof.

{¶6} The ACC was formed sometime in 2004. At the outset, the developer of Morgan Woods, Mid–Ohio Development Corporation, performed the functions of the ACC. At the first annual meeting of the Morgan Woods Homeowners' Association in May 2005, trustees were elected and those trustees assumed the duties of the ACC.

{¶7} Article V, Section 2(o), of the Morgan Woods Restrictions sets forth the process for the construction of a fence on property located in the subdivision. This Section states, "no fence, wall, or barrier of any kind may be erected, except as initially instituted by Declarant, or approved by the Architectural Control Committee, or required by law."

{¶8} If a property owner submits a proposal to the ACC, the ACC must approve or disapprove the submission within fourteen (14) days. If the ACC does not issue a decision within the time frame specified, then Section 2(c) states, "it shall be conclusively presumed that the Architectural Control Committee has approved those plans and specifications."

{¶9} On September 9, 2006, the Wills submitted a proposal to the ACC for the construction of a fence to enclose the backyard of their property. The proposal contained detailed plans, specifications, and an attached drawing.

{¶10} By letter dated September 15, 2006, the ACC advised the Wills that it had received the proposal on September 9, 2006. In the letter, the ACC rejected the proposed use of chain link and wire fencing, requested further information about the fence proposal, and stated that the following criteria applied to the construction of a fence on Howell Drive:

Item bb of the Building Standards for Howell Drive states the following:

The fence height must be between 24 and 48 inches.

No fence can be installed outside of any building setback line. Therefore,

the side fences must be installed at least 15 feet inside both lot lines. Any

fence in front of the house must be at least 35 feet from the road.

No fence can have chain link or wire components.

The ACC attached a document to the letter entitled "Protective Covenants and Building Requirements," which included the above "Item bb." The letter also reiterated, "written approval by the Architectural Committee must be granted before the fence can be installed."

{¶11} On September 26, 2006, the ACC members met with the Wills at their home to discuss the proposed fence. The Wills did not accept any changes to their fence proposal. As a result, the ACC again stated its opposition to the fence plan.

{¶12} On September 27, 2006, the Wills sent a letter to the ACC, arguing that their proposed fence design met the standards established in 2000 and that it was their intention to proceed with installation of the fence as proposed.

{¶13} The Wills next sent a letter to the ACC on October 4, 2006, informing the ACC that they had spoken with Frank Murphy, one of the owners of Mid–Ohio, and that

he advised them that the design standards referenced in the ACC's September 15, 2006, letter had been changed in 2003.

{¶14} The 2003 changes referred to by Murphy were created on October 31, 2003, and set forth certain design standards for construction. These standards were set forth in the "Morgan Woods Subdivision: Design Standards" and created criteria for the construction of roofs, siding materials, garage doors, basketball backstops, and other items. The 2003 standards do not set forth any criteria for the construction of fences.

{¶15} By correspondence dated October 9, 2006, the ACC sent a letter reiterating that any fence must be approved by the ACC prior to installation. The letter included the standards adopted by the ACC on October 6, 2006, affirming the 2000 fence design standards.

{¶16} By letter dated October 11, 2006, the Wills contacted John Reid, an architect previously involved in decisions by the Homeowners' Association, claiming that Frank Murphy had advised them to contact him concerning their design plans and whether such conformed to the guidelines established on October 31, 2003. On November 16, 2006, Reid sent a letter to the Wills "approving" the fence and design plans "contingent upon the fence being installed within the building side yard setback lines (15 feet both sides)." This letter is the subject of the present appeal.

{¶17} The Wills entered into a contract with Newark Fence Company and on or about November 21, 2006, proceeded to install the fence as proposed. The fence was chain-link and was not installed 15 feet from the side boundary lines.

{¶18} On November 24, 2006, the ACC sent a letter to the Wills advising that the ACC believed the fence construction violated the Morgan Woods Restrictions. The ACC

stated that the Wills had not received the requisite approval. In addition, the ACC had adopted the guidelines set forth in its October 9, 2006, letter. These guidelines were adopted on October 6, 2006, and the ACC contended that the fence construction did not comport with those specifications as retroactively applied to the date of application.

{¶19} Plaintiff-Appellee Morgan Woods Homeowners' Association filed a Complaint on July 13, 2007, in the Licking County Common Pleas Court against Defendants-Appellants David B. Wills and Sharon J. Wills, which alleged that the Wills had violated the Morgan Woods Restrictions by constructing a fence without the approval of the Architectural Control Committee ("ACC"). In its complaint, Morgan Woods requested an order directing the Wills to remove the fence, an injunction to prevent the Wills from erecting any fence on the property that had not been "expressly approved," for damages, and attorney fees.

{¶20} The Wills, by answer and counterclaim, contended that there were no properly established guidelines for the approval or disapproval of a request for the construction of a fence and that they did not have notice of the requirements, which Morgan Woods sought to enforce. In addition, the Wills alleged that their plans for the fence had been approved by Morgan Woods's architect as well as by Morgan Woods since Morgan Woods did not respond to the Wills's plan within the time period prescribed by the Morgan Woods Restrictions. The Wills sought by counterclaim a declaratory judgment that Morgan Woods acted unreasonably, arbitrarily, and contrary to law in its interpretation and enforcement of the restrictive covenants; that the Wills's plans and specifications were approved in accordance with the terms of the covenants; that the covenants did not require that fences in the subdivision be constructed within

any setbacks; and that there were no design standards or other standards that reasonably provided notice to the Wills in accordance with the general land use plan for the subdivision.

{¶21} On August 6, 2008, this matter proceeded to trial before a Magistrate of the Licking County Common Pleas Court. The Magistrate's Decision was filed October 4, 2010, and found in favor of Morgan Woods. The Wills filed objections to the Magistrate's Decision.

{¶22} By judgment entry filed May 16, 2011, the Common Pleas Court of Licking County, Ohio, overruled the Wills's objections and adopted the Magistrate's Decision with modifications. The Wills appealed the May 16, 2011 judgment entry to this court. We affirmed the trial court's judgment in *Morgan Woods Homeowners' Assn. v. Wills*, 5th Dist. Licking No. 11 CA 57, 2012-Ohio-233 ("*Morgan Woods I.*"). The Ohio Supreme Court declined to accept jurisdiction of the Wills's appeal of our decision. *Morgan Woods Homeowners' Assn. v. Wills*, 131 Ohio St.3d 1554, 2012-Ohio-2263, 967 N.E.2d 765.

{¶23} On March 21, 2013, the Wills filed a Motion for Relief from Judgment. In their motion, the Wills argued they were entitled to relief from judgment pursuant to Civ.R. 60(B) based on newly discovered evidence, fraud, misrepresentation, and other reasons justifying relief. The trial court held an evidentiary hearing on May 13, 2013. At the hearing, the Wills presented the testimony of John W. Reid and Frank Murphy. The witnesses testified the November 16, 2006 letter from Reid to the Wills approving the fence plan and design was done with the authority of the ACC.

{¶24} The trial court denied the motion for relief from judgment on June 17, 2013. The trial court found the evidence presented at the hearing by Reid and Murphy was "more evidence newly produced rather than newly discovered. Both Reid and Murphy were subpoenaed to testify at the original trial yet did not." Nor did the trial court find misrepresentation or any other reason requiring relief from judgment.

{¶25} It is from this decision the Wills now appeal.

## ASSIGNMENT OF ERROR

{¶26} The Wills raise one Assignment of Error:

{¶27} "THE TRIAL COURT COMMITTED ERROR IN DENYING APPELLANTS' MOTION FOR RELIEF FROM JUDGMENT UNDER RULE 60(B) OF THE OHIO RULES OF CIVIL PROCEDURE."

## ANALYSIS

### Standard of Review

{¶28} The Wills argue the trial court erred in denying their motion for relief from judgment. The decision whether to grant a motion for relief from judgment under Civ.R. 60(B) lies within the trial court's sound discretion. *Griffey v. Rajan,* 33 Ohio St.3d 75, 514 N.E.2d 1122 (1987). In order to find abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, (1983).

{¶29} A party seeking relief from judgment pursuant to Civ.R. 60(B) must show: "(1) a meritorious defense or claim to present if relief is granted; (2) entitlement to relief under one of the grounds set forth in Civ.R. 60(B)(1)-(5); and (3) the motion must be timely filed." *GTE Automatic Electric, Inc. v. ARC Industries, Inc.,* 47 Ohio St.2d 146,

351 N.E.2d 113 (1976), paragraph two of the syllabus. A failure to establish any one of these three requirements will cause the motion to be overruled. *Rose Chevrolet, Inc. v. Adams,* 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988); *Argo Plastic Prod. Co. v. Cleveland,* 15 Ohio St.3d 389, 391, 474 N.E.2d 328 (1984).

{¶30} The Wills's basis for relief is under Civ.R. 60(B)(2), (3), and (5). The Rule states:

> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; * * * (5) any other reason justifying relief from judgment.

### Civ.R. 60(B)(2) Newly Discovered Evidence

{¶31} At the Civ.R. 60(B) evidentiary hearing, the Wills presented the affidavits and live testimony of Frank Murphy and John W. Reid. Frank Murphy was the developer of the Morgan Woods subdivision. Murphy retained Reid, an architect, to assist him with the Morgan Woods subdivision. Murphy testified that on November 14, 2006, he met with Reid, along with John Martin and Harold Soice of the Architectural Control Committee. Murphy testified they agreed that Reid would write a letter to the Wills approving the fence plans contingent upon the Wills's compliance with the 15 feet setback requirement. Reid likewise testified he attended a meeting on November 14, 2006 where he was authorized by John Martin and Harold Soice to write a letter to the Wills approving the fence plans contingent on the 15 foot setback requirement. On November 16, 2006, Reid sent a letter to the Wills "approving" the fence and design plans "contingent upon the fence being installed within the building side yard setback

lines (15 feet both sides)." The Wills have maintained they built the fence on their property based on Reid's November 16, 2006 letter. Morgan Woods has argued the ACC did not authorize Reid to write the letter.

{¶32} The Wills assert they did not discover the evidence presented by Murphy and Reid until 2012. Civ.R. 60(B)(2) states that relief from judgment may be granted based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B). Civ.R. 59(B) states that a "motion for a new trial shall be served not later than twenty-eight days after the entry of the judgment." The issue is whether the evidence presented by Murphy and Reid was newly discovered evidence. The trial court found the evidence was not newly discovered which by due diligence could not have been discovered in time to move for a new trial under Civ.R 59(B). We agree.

{¶33} On August 1, 2008, the Wills submitted their witness list to the trial court in preparation for trial. The Wills listed Frank Murphy and John Reid as potential defense witnesses. The Wills did not call Murphy or Reid as witnesses at trial.

{¶34} At the evidentiary hearing on the motion for relief from judgment, there was no evidence presented by the Wills as to how the evidence presented by Murphy and Reid was newly discovered pursuant to the meaning under Civ.R. 60(B)(2).

{¶35} The trial court did not abuse its discretion in determining the evidence from Murphy and Reid did not support the Wills's contention that it was newly discovered pursuant to Civ.R. 60(B). As the trial court noted, the Wills had the opportunity to call Murphy and Reid as witnesses at the trial and elicit their testimony as to their understanding of Reid's authorization to write the letter to the Wills. The Wills did

not call Murphy or Reid to testify, causing the trial court to characterize the evidence in its June 17, 2013 judgment entry not as "newly discovered," but rather "newly produced."

{¶36} Further, the Wills have raised on appeal the significance of Reid's letter approving the fence plans. In their original appeal, the Wills argued the trial court did not give Reid's correspondence sufficient weight. *Morgan Woods I*, 2012-Ohio-233 at ¶ 40. We considered the letter and affirmed the judgment of the trial court.

<u>Civ.R. 60(B)(3) Fraud</u>

{¶37} The Wills contend the conflict in testimony as to whether Reid was authorized to write the letter on behalf of the ACC entitles the Wills to relief from judgment pursuant to Civ.R. 60(B)(3). Civ.R. 60(B)(3) considers "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; * * *." The fraud or misconduct contemplated by Civ.R. 60(B)(3) is fraud or misconduct on the part of the adverse party in obtaining the judgment by preventing the losing party from fully and fairly presenting his defense, not fraud or misconduct which in itself would have amounted to a claim or defense in the case. *PNC Bank, Natl. Assn. v. Botts*, 10th Dist. No. 12AP-256, 2012-Ohio-5383, ¶ 15 citing *State Alarm, Inc. v. Riley Indus. Servs.,* 8th Dist. Cuyahoga No. 92760, 2010–Ohio–900, ¶ 21; *First Merit Bank, N.A. v. Crouse,* 9th Dist. Lorain No. 06CA008946, 2007–Ohio–2440, ¶ 32; and *LaSalle Natl. Bank v. Mesas,* 9th Dist. Lorain No. 02CA008028, 2002–Ohio–6117, ¶ 15. Fraud of an adverse party may exist when, for example, a party presents material false testimony at trial, and the falsity is not discovered until after the trial. *PNC*

*Bank, Natl. Assn.*, 2012-Ohio-5383, at ¶ 15 citing *Seibert v. Murphy,* 4th Dist. Scioto No. 02CA2825, 2002–Ohio–6454.

{¶38} At the original trial, John Martin of the ACC testified that Reid was not authorized to approve the fence plans. Reid testified at the Civ.R. 60(B) evidentiary hearing that if John Martin of the ACC questioned Reid's authority to issue the November 16, 2006 letter, that would be false. (T. 10). Reid's testimony does not render John Martin's testimony false – it presents a conflict in testimony to be resolved by the fact finder. The Wells had the opportunity to allow the trial court to resolve the conflict at the original trial.

### Civ.R. 60(B)(5) Any Other Reason

{¶39} Civ.R. 60(B)(5) operates as a catch-all provision and "reflects 'the inherent power of a court to relieve a person from the unjust operation of a judgment.' " *Maggiore v. Barensfeld*, 5th Dist. No. 2011CA00180, 2012-Ohio-2909,¶ 35 citing *Dutton v. Potroos,* 5th Dist. Stark No.2010CA00318, 2011–Ohio–3646, at ¶ 49. It is reserved for "extraordinary and unusual case[s]," *Myers v. Myers,* 9th Dist. Summit No. 22393, 2005–Ohio–3800, at ¶ 14, and "is not a substitute for the enumerated grounds for relief from judgment[.]" *Id.*

{¶40} We do not find the facts and circumstances of this case present this court with an extraordinary and unusual situation to warrant the application of Civ.R. 60(B)(5).

### Meritorious Defense

{¶41} A failure to establish any one of the three *GTE* requirements will cause the motion to be overruled. Morgan Woods argues that the Wills cannot establish a meritorious defense to its claims. The November 16, 2006 letter stated the fence plans

were approved "contingent upon the fence being installed within the building side yard setback lines (15 feet both sides)." There has been no dispute of fact at any stage of these proceedings that the Wills failed to comply with the 15 feet setback requirements. *Morgan Woods I*, 2012-Ohio-233, at ¶ 50. We held in *Morgan Woods I*, "[e]ven assuming *arguendo* that Appellants [the Wills] believed that Mr. Reid had approved their fence plans and that such reliance was reasonable, Appellants still failed to comply with the contingencies precedent as set forth in his correspondence." *Id.*

{¶42} Based on the foregoing, we find no abuse of discretion for the trial court to overrule the motion for relief from judgment filed by Defendants-Appellants David B. and Sharon J. Wills. The sole Assignment of Error is overruled.

### CONCLUSION

{¶43} The judgment of the Licking County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Farmer, J., concur.